UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-Cv-14427-GRAHAM
        (07-Cr-14035-GRAHAM)
MAGISTRATE JUDGE P. A. WHITE

CALVIN GODWIN,                    :

          Movant,                 :

v.                                :          REPORT OF
                                             MAGISTRATE JUDGE
UNITED STATES OF AMERICA,  :

          Respondent.             :
_____

I.  Introduction

     This matter is before this Court on Calvin Godwin's motion to
vacate pursuant to 28 U.S.C. §2255, attacking his conviction and
sentence for conspiracy to possess with intent to distribute 500
grams or more of cocaine, in violation of 21 U.S.C. §846;
conspiracy to possess with intent to distribute 5 grams or more of
cocaine base, in violation of 21 U.S.C. §846; possession with
intent to distribute 50 grams or more of cocaine base, in violation
of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2; possession with intent to
distribute 5 grams or more of cocaine base, in violation of 21
U.S.C. §841(a)(1) and 18 U.S.C. §2; and possession of a firearm by
a convicted felon, in violation of 18 U.S.C. § 922(g)(1), entered
following a guilty plea in case no. 07-Cr-14035-Graham.

     The Court has reviewed the original and amended motions (Cv-
DE# 1, 10, 11, 16), the government's response (Cv-DE# 13), the
movant's reply (Cv DE# 15), the Presentence Investigation Report
(PSI), and all pertinent portions of the underlying criminal file.

Construing the movant's claims liberally as afforded <u>pro se</u> litigants, pursuant to <u>Haines v. Kerner</u>, 404 U.S. 419 (1972), the movant argues ineffective assistance of counsel for:

1.  Failing to file a motion to suppress the wiretap tapes as having violated 18 U.S.C. §2518(8)(a);

2.  Failing to file a motion to suppress incriminating statements obtained in violation of his Sixth Amendment right to counsel;

3.  Failing to file a motion to suppress a firearm and ammunition seized from inside a shed near his house when the shed was beyond the scope of the search warrant;

4.  Misadvising Godwin that he could expect a maximum sentence of ten years if he pled guilty based on Godwin's cooperation with law enforcement;

5.  Failing to object to the trial court's failure to permit Godwin to allocute prior to the imposition of the sentence;

6.  Failing to object to the PSI as the probation officer did not compute a guideline sentence for his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[1]

## II.  <u>Facts and Procedural History</u>

In an opinion issued in Godwin's direct appeal, the Eleventh Circuit provided the following facts.  <u>United States v. Godwin</u>, 296 Fed. Appx. 744 (11 Cir. Oct. 14, 2008).  On April 28, 2006, Godwin negotiated a drug deal with an undercover agent in which he and his co-defendant, Kenneth Green, sold 14.3 grams of crack cocaine for $400.  On July 28, 2006, Godwin sold an undercover officer 117.1

---

[1]     Godwin does not number his claims one through six, and instead groups some claims together and repeats the same claim under different subsections. Accordingly, the claim numbers in this Report do not correspond with those in Godwin's motion to vacate.

grams of crack cocaine for $3200. In January of 2007, law enforcement officers began wire tapping Godwin's phone. In March of 2007, Godwin had telephone conversations with a drug supplier about the price for a kilogram of cocaine. In April of 2007, Godwin called his brother, Terrance Godwin, to discuss a drug transaction. On April 24, 2007, police officers arrested Godwin on state charges, executed a search warrant issued by a state court judge, and found a firearm and some crack cocaine in his residence and a second firearm in a shed. At first, Godwin denied any involvement in the crimes but he later changed his mind, telling officers in the spirit of cooperation that he had buried about half a kilogram of cocaine in his backyard. After agents dug up the cocaine, ATF Agent Osborne interviewed Godwin on May 1, 2007. Agent Osborne advised Godwin of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and did not promise him anything for making his statements. Godwin admitted he had sold drugs for 29 years and did at least twenty cocaine deals involving a kilogram or more. Godwin also detailed specific deals with his supply sources, including the sale of two kilograms in February of 2007 and the purchase of two kilograms a few weeks prior to his arrest.

On May 4, 2007, a grand jury returned a multiple-count indictment against Godwin, Terrance Godwin, Vincent Snyder, Lenwood Davies, and Kenneth Green for various drug related offenses. The indictment charged Godwin as follows: Count 1, conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §846; Count 3, conspiracy to possess with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. §846; Count 4, possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2; Count 8, possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. §841(a)(1)

3

and 18 U.S.C. §2; and Count 11, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Cr DE# 1). Godwin was arrested on federal charges pursuant to a May 8, 2007 arrest warrant. (PSI ¶34).

Godwin plead guilty to counts 1, 3, 4, 8, and 11 on the record during a change of plea hearing before Magistrate Judge Lynch. (Cr-DE# 126). Judge Lynch subsequently issued a report and recommendation accepting the guilty plea (Cr DE# 126), which the district court adopted (Cr DE# 153).

Prior to sentencing, a PSI was prepared which revealed as follows. The PSI grouped counts 1, 3, 4, and 8 together pursuant to U.S.S.G. §2D1.1. (PSI ¶46). Count 11 was grouped with the other counts because one of the counts embodied conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts, U.S.S.G. §3D1.2(a)-(c). (PSI ¶46). In the case of counts grouped together, pursuant to U.S.S.G. §3D1.2(b), the offense level applicable to the group is the offense level determined for the most serious of the charges. (PSI ¶46). The PSI set the movant's base offense level at 34, pursuant to U.S.S.G. §2D1.1(a)(3), because the most serious offense involved possession with intent to distribute at least 3,000 but less than 10,000 kilograms of marijuana and Godwin was responsible for 5,112 kilograms. (PSI ¶48). The offense level was increased by two levels pursuant to U.S.S.G. §2D1.1(b)(1) because a dangerous weapon (including a firearm) was possessed. (PSI ¶49). Three levels were then deducted, pursuant to U.S.S.G. §3E1.1, based on the movant's timely acceptance of responsibility, resulting in a total offense level of 33. (PSI ¶55-57).

The probation officer also determined that the movant had a total of zero criminal history points, resulting in a criminal history category I. (PSI ¶62).

The statutory term of imprisonment as to counts 1, 3, and 8 was five to forty years in prison under 21 U.S.C. §841(b)(1)(B); as to count 4 was ten years to life under 21 U.S.C. §841(b)(1)(A); and as to count 11 was zero to ten years under 18 U.S.C. 922(g)(1). (PSI ¶95). Based on a total offense level of 33 and a criminal history category I, the movant's resulting guideline range was 135 to 168 months in prison. (PSI ¶96).

On October 23, 2007, the movant appeared for sentencing. (Cr-DE# 197). The court sentenced him to a term of 168 months for counts 1, 3, 4, and 7 to run concurrent with a 120-month sentence for count 11. (Cr-DE# 208).

Godwin appealed. (Cr DE# 201). The Eleventh Circuit affirmed the movant's conviction and sentence in a written, but unpublished opinion. United States v. Godwin, 296 Fed. Appx. 744 (11 Cir. Oct. 14, 2008). Godwin filed a petition for writ of certiorari in the Supreme Court, which was subsequently denied. Godwin v. United States, 129 S.Ct. 955 (Jan. 12, 2009).

On December 17, 2009, Godwin filed a motion to vacate his sentence pursuant to 28 U.S.C. §2255.[2] (Cv-DE# 1). Godwin subsequently filed an amended motion to vacate (Cv DE# 10) and a motion to dismiss the grounds raised in the original motion (Cv DE# 11). The Undersigned issued an order wherein it deemed the amended

---

[2]   See Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). The government does not argue that Godwin's motion was untimely.

motion to vacate as the operative complaint. (Cv DE# 17). The
United States filed a response. (Cv-DE# 13). Godwin filed a reply
to the response. (Cv-DE# 15).

### III.   Standard of Review

The law is clear that Section 2255 authorizes a prisoner to
move a sentencing court to vacate, set aside, or correct a sentence
where "the sentence was imposed in violation of the Constitution or
laws of the United States, or . . . the court was without
jurisdiction to impose such sentence, or . . . the sentence was in
excess of the maximum authorized by law, or is otherwise subject to
collateral attack." See 28 U.S.C. §2255(a); see also, Hill v.
United States, 368 U.S. 424, 426-27 (1962). "A sentence is
otherwise subject to collateral attack where there is an error
constituting a 'fundamental defect which inherently results in a
complete miscarriage of justice.'" United States v. Jones, 56 F.3d
62 (4 Cir. 1995)(citations omitted).

In this collateral proceeding, the movant raises multiple
claims which challenge counsel's effectiveness. Ineffective
assistance of counsel claims are subject to the two-part test
enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which
is not a favorable standard to the movant. See Massaro v. United
States, 538 U.S. 500, 505 (2003). To prevail on a claim of
ineffective assistance, a movant must demonstrate both that
(1) counsel's performance was deficient, meaning that it fell below
an objective standard of reasonableness; and (2) the deficient
performance prejudiced the defendant. Chandler v. United States,
218 F.3d 1305, 1312-13 (11 Cir. 2000)(en banc), cert. denied, 531
U.S. 1204 (2001). ; Strickland v. Washington, 466 U.S. 668 (1984).
Moreover, a habeas court's review of a claim under the Strickland

6

standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009). In deciding whether counsel's performance was deficient, judicial scrutiny is "highly deferential" and requires us to "'indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.'" <u>Id</u>. at 1314 (<u>quoting</u> <u>Strickland v. Washington</u>, 466 U.S. at 689-90.

When assessing a lawyer's performance, "[C]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Chandler v. United States</u>, 218 F.3d 1305 (11 Cir. 2000)(en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322 (11 Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), <u>quoting</u>, <u>Strickland v. Washington</u>, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698.

The Eleventh Circuit will not "second-guess counsel's strategy." <u>Chandler</u>, 218 F.3d at 1314, n.14. Strategic choices,

even those "made after less than complete investigation," are evaluated for their reasonableness and "counsel's reliance on particular lines of defense to the exclusion of others--whether or not he investigated those other defenses--is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." <u>Chandler</u>, 218 F.3d at 1318 (<u>quoting</u> <u>Strickland</u>, 466 U.S. at 690-91).

The courts "are not interested in grading lawyers' performances;" but rather, "are interested in whether the adversarial process at trial...worked adequately." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11 Cir. 1994)(quotation marks omitted). To be unreasonable, the performance must be such that "no competent counsel would have taken the action that [the petitioner's] counsel did take." <u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11 Cir. 2001)(emphasis omitted). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d at 386.

Under the second prong of the test set forth in <u>Strickland</u>, the movant can be said to have been prejudiced by counsel's performance only if there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. Rather, the movant must demonstrate that "there is a reasonable probability that, absent [counsel's] errors, the jury would have had a reasonable doubt regarding [his] guilt." <u>Blackburn v. Foltz</u>, 828 F.2d 1177, 1186 (6 Cir. 1987), <u>cert. den'd</u>, 485 U.S. 970 (1988), <u>see also</u>, <u>Montgomery v. Petersen</u>, 846 F.2d 407, 416 (7

8

Cir. 1988).

Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration.  See United States v. Robinson, 64 F.3d 403, 405 (8 Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11 Cir. 1983), United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979).

IV.  Discussion

Under **ground one**, Godwin asserts he was denied effective assistance of counsel because his attorney failed to file a pre-trial motion to suppress the wiretap tapes.  Godwin states that the government failed to comply with 18 U.S.C. §2518(8)(a) which requires that wiretap tapes be sealed "immediately" upon expiration of the order authorizing the wiretap. The government counters that the wiretaps were authorized by a state court order, accordingly, a motion to suppress under federal law, which did not apply to the state court proceedings, would have been unsuccessful.  The government further notes that counsel is not ineffective when failing to file a meritless motion.

According to the PSI, "[i]n January of 2007, a multi-agency task force initiated a **state court** ordered wire intercept on the cellular telephones of Calvin Godwin, Terrance Godwin, Donnie Ausby, Tommy Pennamon, and Vincent Snyder." (PSI ¶13). Accordingly, the federal rules governing wiretaps were not applicable to the wiretaps about which Godwin complains.  His counsel would not have been successful had he filed a motion to suppress on these grounds.  Accordingly, Godwin fails to allege facts sufficient to show deficient performance and/or prejudice.

See Strickland.

Under **ground two**, Godwin asserts he was denied effective assistance of counsel because his attorney failed to file a pre-trial motion to suppress incriminating statements obtained in violation of his Sixth Amendment right to counsel "because the statements were taken by law enforcement without Godwin's counsel being present and immediately following the state court initial appearance hearing and just a few days prior to the return of the federal indictment." (Cv DE# 10, p. 11).   The government counters that a motion to suppress would have been denied because Godwin had not been charged in federal court when he made the statements, Godwin initiated the contact with law enforcement, the officers repeatedly advised Godwin of his Miranda rights, and the federal sentencing court judge expressly rejected Godwin's testimony that his request for a lawyer prior to his statement was rejected by the officers.  (Cv DE# 13, p. 13).

In this case, Godwin was arrested on state charges and, in a post-arrest statement, denied any participation in the sale and delivery of controlled substances. (PSI ¶29).  Subsequently, Godwin initiated contact with Detective Rodriguez, who went to the jail on Godwin's request.  According to Rodriguez's testimony at Godwin's sentencing hearing, after being advised again of his Miranda rights, Godwin told the officer about the cocaine buried in his backyard.  On May 1, 2007, Detective Rodriguez returned with ATF Agent Osborne to see Godwin.  Godwin signed a statement waiving his Miranda rights and then detailed his drug activities for the past 29 years.  Godwin, 296 Fed. Appx. 744.  On May 4, 2007, an indictment was returned and federal arrest warrant issued for Godwin. (PSI ¶34).

Under the Sixth Amendment, "'[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense.' U.S. Const. amend. VI. The Sixth Amendment right to counsel is offense specific." United States v. Burgest, 519 F.3d 1307, 1309-10 (11 Cir. 2008) (quoting McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991)). "It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Id. at 1310 (quoting McNeil, 501 U.S. at 175). In Burgest, federal agents interviewed Burgest after he had been charged by the state for drug related offenses and had invoked his right to counsel in connection with the state charges, but before he was charged for federal drug offenses. Id. The Eleventh Circuit held that where, as in Burgest's case, "conduct violates laws of separate sovereigns, the offenses are distinct for purposes of the Sixth Amendment right to counsel. Accordingly, Burgest's right to counsel did not attach to his federal charges at the time federal agents questioned him." Id.[3]

The facts in this case are indistinguishable from those in Burgest. When Godwin made the statement he claims should have been the subject of a pre-trial motion to suppress, he was in state custody facing state charges, no federal charges were pending at that time, namely, on May 1, 2007. The federal indictment and

---

[3]   See United States v. Alvarado, 440 F.3d 191 (4th Cir.2006), cert. denied, 549 U.S. 817, 127 S.Ct. 81, 166 L.Ed.2d 29 (2006) (applying dual sovereignty doctrine to Sixth Amendment); United States v. Coker, 433 F.3d 39 (1st Cir.2005) (same); United States v. Avants, 278 F.3d 510 (5th Cir.2002) (same); see also United States v. McCloud, No. CR406-247, 2007 WL 1706353 (S.D.Ga. June 11, 2007); United States v. Lall, No. 8:06-cr-508-T-23MAP, 2007 WL 1521487 (M.D.Fla. May 23, 2007). But see United States v. Mills, 412 F.3d 325 (2d Cir.2005); United States v. Red Bird, 287 F.3d 709 (8th Cir.2002).

arrest warrant were dated May 4, 2007.  Accordingly, had defense
counsel moved to suppress the statement, the motion would not have
been successful.  The movant has therefore failed to establish
either deficient performance or prejudice stemming from counsel's
failure to pursue a nonmeritorious claim.  See Strickland, 466 U.S.
at 694.

Under **ground three**, Godwin asserts he was denied effective
assistance of counsel because his attorney failed to file a pre-
trial motion to suppress a firearm and ammunition seized from
inside a shed near his house when the shed was beyond the scope of
the search warrant, which Godwin attached to his original motion to
vacate (Cv DE# 1, Exh. A).  The government counters that the search
warrant specifically authorized a search of the curtilage of
Godwin's property.  The government further argues that the shed in
question was located within the curtilage.

In this case, Calvin Godwin's residence was located at 6565
86th Street, Wabasso, Florida.  The search warrant issued by a
state court judge authorized law enforcement to search "6565 86th
Street, Wabasso, Florida, being the premises and its curtilage, any
vessels, vehicles and outbuildings found upon said premises
occupied by or under the control of a black male known as Calvin
Godwin." (Cv DE# 1-1, p. 21).  Godwin alleges in his motion to
vacate that the shed was not located within the curtilege and was
actually located on his mother's property.  This allegation is
refuted by the record.  Specifically, during the sentencing hearing
Godwin's brother testified that the shed was located on fenced-in
property which Godwin owned and which was adjacent to Godwin's
house.  (Cv DE# 13-7, p. 67-78). Godwin's mother testified that
Godwin used the shed to store his possessions.  (Cv DE# 13-8, p.
71-72).  In light of the foregoing, Godwin simply provides a

conclusory statement that his Fourth Amendment rights were violated because the warrant did not authorize the search of the shed as it was located on his mother's land.  The allegations under ground three fall short of establishing ineffective assistance of counsel and are not supported by any evidence.  See United States v. Robinson, 64 F.3d 403, 405 (8 Cir. 1995) (Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration).  The movant has therefore failed to establish either deficient performance or prejudice under ground three.  See Strickland, 466 U.S. at 694.

Under **ground four**, Godwin alleges ineffective assistance of counsel for misadvising him that he could expect a maximum sentence of ten years if he pled guilty based on Godwin's cooperation with law enforcement early on.  Godwin alleges that he would not have entered a plea had he known that he would be sentenced to more than ten years.  (Cv DE# 10, p. 12-13).  The government counters that Godwin's claim is refuted by the record, specifically, Godwin's statements under oath during the change of plea hearing.  (Cv DE# 13, p. 14).

At the outset of the change of plea hearing, Godwin was placed under oath. (Cv DE# 13-2, p. 3).  Godwin answered, "No, sir" in response to the court's asking "Has anyone made any promises or assurances to you of any kind in an effort to induce you to plead guilty?" and "Has anyone attempted in any way to force you to plead guilt?"  (Id. p. 7). The court next directed the prosecutor to state each charge and the possible penalties.  The prosecutor responded with the following:

[I]n count 1, the defendant is charged with conspiracy to

13

possess with intent to distribute 500 grams or more of cocaine. He faces a minimum 5 years up to 40 years in prison . . . Count 3 charges the defendant with conspiracy to possess with intent to distribute 5 grams or more of cocaine base. He faces a minimum 5 years and up to 40 years in prison . . . In Count 4 he is charged with possession with intent to distribute 50 grams or more of cocaine base. He faces a minimum 10 years up to life in prison . . . In count 8 he is charged with possession with intent to distribute 5 grams or more of cocaine base. He faces a minimum 5 years up to 40 years in prison . . . Lastly, in count 11 he is charged with possession of a firearm by a convicted felon. He faces a maximum of 10 years in prison."

(Id. p. 8-9). After the prosecutor explained the charges, penalties, and factual basis, the following exchange took place between the Judge and Godwin.

**The Court**: Do you understand that . . . the sentence imposed may be different from any estimate your attorney may have given you?
**Godwin**: Yes, sir.
    . . .
**The Court**: Do you also understand that the District Court has the authority to depart from the guidelines and sentence you up to the statutory maximum permitted by law in your case?
**Godwin**: Yes, sir.

Subsequent to this exchange, Godwin plead guilty to each count. (Id.).

The foregoing illustrates that Godwin was repeatedly informed, before he actually entered his guilty plea, that the sentencing judge had the authority to impose a sentence which was longer than ten years. The record also refutes his current allegation that defense counsel promised him a maximum ten-year sentence for all charges if he entered the plea. Accordingly, he cannot establish ineffective assistance of counsel under these circumstances.

14

Under **ground five**, Godwin alleges ineffective assistance of counsel for failing to object to the trial court's failure to permit Godwin to allocute prior to the imposition of the sentence. The government responds that Godwin did in fact exercise his right to speak prior to being sentenced.

The Supreme Court in <u>Green v. United States</u>, 365 U.S. 301, 304-5 (1961), addressed the right to allocution pursuant to <u>Fed.R.Crim.P.</u> 32(a), and held that before imposing sentence, a defendant must be afforded a personal opportunity to allocute, stating that trial courts should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing. Permitting counsel to speak on a client's behalf does not satisfy the right to allocution. <u>See</u> <u>United States v. Phillips</u>, 936 F.2d at 1256, <u>citing</u>, <u>Green v. United States</u>, 365 U.S. at 305.

The decision in <u>United States v. Hill</u>, 368 U.S. 424, 425 (1962), followed soon after. In that case, the Court held that "collateral relief is not available when all that is shown is a failure to comply with the formal requirements of Rule 32(a)." The Court noted that the defendant was not affirmatively denied an opportunity to speak, nor was there a claim that the defendant would have had anything to say if he had been formally invited to speak. <u>Id</u>. at 429. The Court reasoned that without a showing of prejudice, the error would not rise to the magnitude of those cognizable for relief on collateral attack. <u>Id.</u> at 426.

Until recently, most Eleventh Circuit cases addressing this issue on direct appeal from the underlying judgements held that the District Court's failure to address a defendant personally and afford him the opportunity to make a statement required automatic resentencing. <u>See</u>, <u>United States v. Medina</u>, 90 F.3d 459 (11 Cir.

1996) <u>citing</u> <u>United States v. Phillips</u>, 936 F.2d 1252 (11 Cir. 1991), <u>United States v. Taylor</u>, 11 F.3d 149, 151-52 (11 Cir. 1994).

In <u>Rodriquez-Velasquez</u>, 132 F.3d 698 (11 Cir. 1998), however, the defendant was not asked by the trial Court if he wished to avail himself of his right to allocution, but was specifically asked if he had any <u>Jones</u>[4] objections when sentencing the defendant. In that case, the defendant did not voice objections. The Eleventh Circuit held that the failure to object waived the defendant's right to appeal the denial of his right to allocution, and the Court would therefore remand for resentencing only if failure to do so would result in manifest injustice. Applying the "manifest injustice standard," the Court found that because Rodriquez-Velasquez received the lowest possible sentence within the guidelines, the trial Court's failure to allow Rodriquez-Velasquez to allocute at sentencing was harmless error, and not manifest injustice. <u>See also</u> <u>United States v. Quintana</u>, 300 F.3d 1227 (11 Cir. 2002)(likewise finding no manifest injustice because district court imposed the lowest term of imprisonment permissible under the Guidelines.)

In this case, the movant's claim that counsel failed to permit him to allocute at sentencing is unsupported by the record.  When asked by Judge Graham whether he had any questions regarding the PSI, Godwin responded, "I want to see how to proceed, it's gonna go, and then we can go from there, Judge, if it's all right with you." (Cv-DE#13-8, p. 4-5).  Godwin testified at length during the sentencing hearing in an attempt to explain his criminal behavior.

---

[4]In <u>United States v. Jones</u>, 899 F.2d 1097 (11 Cir. 1990), the Eleventh Circuit held that "[w]here the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for purposes of appeal, and this court will not entertain an appeal based upon such objections unless refusal to do so would result in manifest injustice." <u>Id.</u> at 1103.

(Cv-DE#13-8, 42-44).  In addition, Godwin instructed his counsel to call seven witnesses to the stand to testify in support of a lesser sentence.  (Cv-DE#13-8, 70, 128).  Immediately after imposing the sentence, the court specifically inquired on the record whether "the defendant or his counsel" objected to the court's findings of fact or to the manner in which the sentence was pronounced. (Cv-DE#13-8, p. 64).  In response, counsel stated on the record he had no objections. (Id.). The movant, however, remained silent. (Id.). The court then addressed Godwin specifically regarding his appellate rights and concluded by asking Godwin, "Do you understand your appellate rights, sir?" (Id. at 65).   Godwin responded with the following: "Yes, sir.  I'd like to make a statement.  I'd like to apologize to your Court, Your Honor.  And Your Honor, I was offered a deal on this case, but it was a verbal deal, and I was – truly was misguided and they truly told me I didn't need an attorney when I made all the statements with these guys and they promised me a deal, Your Honor.   They promised me that, Your Honor." (Id.). The court replied, "Well, Mr. Godwin, I've already made findings with respect to those issues, but I appreciate your statement."  (Id.).  Based on the record before this court, it is readily apparent that the movant provided a statement in support of allocution. Consequently, counsel was not deficient for failing to pursue this nonmeritorious claim.

Under **ground six**, it should first be noted that the issue of the relevant conduct regarding use of a firearm in connection with the drug offenses was raised by defense counsel in written objections to the PSI and raised by Godwin's appellate counsel in the Eleventh Circuit, which issued a written opinion affirming the District Court's conclusion that the firearm was related to

17

Godwin's continued drug transactions.[5]  United States v. Godwin, 296 Fed. Appx. 744 (11 Cir. Oct. 14, 2008).  The movant in this collateral proceeding has not demonstrated a change in circumstance, sufficient to warrant relitigation of the claim. Thus, the presentation of the claim in this §2255 proceeding in the guise of an ineffective assistance of counsel claims adds nothing of substance which would justify a different result. See Hobson v. United States, 825 F.2d 364, 366 (11th Cir. 1987)(claim raised and considered on direct appeal precludes further review of the claim in a §2255 motion), vacated on other grounds, 492 U.S. 913 (1989); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Webb v. United States, 510 F.2d 1097 (5th Cir. 1975); Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7 Cir. 1994); Graziano v. United States, 83 F.3d 587 (2d Cir. 1996)(Collateral attack on a final judgment in a criminal case is generally available under §2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice.).

Godwin alleges ineffective assistance of counsel for failing to object to the PSI as the probation officer did not compute a guideline sentence for his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Godwin's claim is refuted by the record.  The PSI accurately grouped all offenses.  The PSI provided:

---

[5]  The District Court reached this conclusion when resolving whether a two-level increase under U.S.S.G. 2D1.1(b)(1), because a dangerous weapon was possessed, was appropriate.  Godwin's claim fails to the extent Godwin argues ineffective assistance of counsel for failing to argue that the enhancement was inappropriate because the firearm was not related to Godwin's drug offenses.  In this case, the record refutes this claim as defense counsel raised this precise issue in objections to the PSI and during the sentencing hearing.

**46.** The guidelines for counts 1, 3, 4, and 8 are found in §2D1.1. These counts are grouped together pursuant to §3D1.2(d). The guideline for count 11 is found in §2K2.1. That count is grouped with the other counts because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts, U.S.S.G. §3D1.2(a)-(c).

**47.** In the case of counts grouped together, pursuant to U.S.S.G. §3D1.2(b), the offense level applicable to a Group is the offense level, determined in accordance with Chapter 2 and Parts A,B, and C of Chapter 3, for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the group, §3D1.3(a). In this case, §2D1.1 produces the highest offense level.

**48.** Base Offense Level: The guideline for 21 U.S.C. §§846 and 841(a)(1) offenses is found in §2D1.1(a)(3) of the guidelines. That section provides that an offense involving possession with intent to distribute at least 3,000 kilograms but less than 10,000 kilograms of marijuana has a base offense level of 34. The defendant is responsible for 5,112 kilograms of marijuana.

The foregoing illustrates that the firearm was subsumed within the other convictions. Godwin mistakenly believes his guideline should not have considered his relevant conduct, to-wit, his possession of at least 3,000 but less than 10,000 kilograms of marijuana. The PSI properly grouped the offenses and properly calculated his base offense level.

In his reply to the government's response, Godwin argues that the facts in his case are distinguishable from the facts in <u>United States v. Hunter</u>, 980 F. Supp. 1439 (M.D. Ala. 1997). In <u>Hunter</u>, the defendant was arrested for selling several grams of amphetamine in a gas station parking lot to a confidential informant of the Prattville, Alabama police department. Subsequent to his arrest, officers searched his residence and discovered two loaded firearms

19

and "hundreds of plastic bags commonly associated with drug transactions, a jar containing a substance that may be used to 'cut,' or dilute, drug aliquots to increase their volume, and records of drug transactions, including lists of customers and suppliers . . . over 100 glass vials, and syringes containing what appeared to be drug residue."   The court concluded that "the overwhelming weight of the uncontradicted evidence presented by the government at sentencing indicates that Hunter had been engaging in drug-distribution activities at his residence around the time that he was arrested on the instant charges."   As a result, the court made the following determination:

> Accordingly, the court concludes that Hunter did indeed possess his weapons during the commission of conduct relevant to the drug offenses to which he pled guilty, and so the two-level enhancement applies to his sentence pursuant to § 2D1.1(b)(1). Thus, the court finds that the conduct underlying Hunter's firearms-possession charge is a specific offense characteristic of his drug offenses and, pursuant to § 3D1.2(c), the firearms-possession and drug charges will be grouped together for purposes of determining his sentence under the Guidelines.

Id.

Godwin argues that Hunter is distinguishable and states, "Godwin's shotgun had been found inside his bedroom and there had been no evidence presented that Godwin had conducted any drug activity from his bedroom.  The rifle had been found inside a shed . . . there had not been any evidence presented that Godwin had conducted any drug activity from inside the shed." (Cv DE# 15, p. 24).  As noted above, the Eleventh Circuit addressed this precise issue when resolving whether the district court erred by applying the two-level enhancement for possession of a firearm pursuant to U.S.S.G. §2D1.1(b)(1). The Eleventh Circuit stated in pertinent part:

> The enhancement for weapon possession should be

applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n. 3. (2008). Once the government shows by a preponderance of the evidence that a firearm was present, "the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." <u>United States v. Hansley</u>, 54 F.3d 709, 716 (11th Cir.1995) (internal quotation marks omitted). A connection is shown where the "firearm is possessed during conduct relevant to the offense of conviction." <u>Pham</u>, 463 F.3d at 1246 (internal quotation marks omitted). In a drug conspiracy case, this means the enhancement applies if firearms are found in a place where acts occurred in furtherance of the conspiracy. <u>See id.</u> Such acts may include conversations regarding the drug scheme. <u>See Hansley</u>, 54 F.3d at 716.

Here, the evidence clearly established that the firearms were found in and near Godwin's home, where acts occurred in furtherance of the drug conspiracy. Godwin and his co-conspirators trafficked in crack cocaine and cocaine. Godwin's brother, Terrance, testified at the sentencing hearing that he and Godwin conducted drug transactions in the backyard of Godwin's home. R3 at 51-52. Godwin would call Terrance after receiving the cocaine and Terrance would go to Godwin's house to pick up the drugs. <u>Id.</u> at 57. At Godwin's house, officers found a loaded shotgun inside Godwin's bedroom and crack cocaine in another bedroom. <u>Id.</u> at 16-17. Godwin acknowledged that he bought that shotgun after he was shot during a drug deal he was transacting in 2003. <u>Id.</u> at 36-39, 46-47. A second firearm and a box of ammunition was found in a shed in an empty lot next to Godwin's home. <u>Id.</u> at 75. Godwin referred to the shed as his "office" and stored personal property inside it. Id. at 77. Officers also found approximately half a kilogram of cocaine buried in Godwin's yard. <u>Id.</u> at 73-74. Godwin presented no evidence suggesting that a connection between the firearms and his drug conspiracy was clearly improbable.

We conclude that the district court did not clearly err in finding that the firearm was related to Godwin's continued drug transactions and the drugs found in his yard and the shed. The two-level enhancement for possession of a firearm was properly applied in this case. <u>See Pham</u>, 463 F.3d at 1246 (enhancement warranted

in drug conspiracy case where firearm and marijuana found in a safe in co-conspirator's bedroom); <u>United States v. Fields</u>, 408 F.3d 1356, 1359 (11th Cir.2005) (firearm connected to drug conspiracy where firearms found at locations that co-conspirators sold drugs); <u>Hansley</u>, 54 F.3d at 716 (enhancement properly based on firearm and other drug-related items found in defendant's residence, where he engaged in conspiratorial conversations).

In light of the foregoing, Godwin fails to establish that the probation officer improperly grouped his charges.  Had defense counsel objected to this aspect of the PSI, the District Court would have rejected his argument.  There is no deficient performance or prejudice under <u>Strickland</u> where counsel failed to raise a nonmeritorious claim.


The government addresses a **seventh ground**, namely, whether counsel was ineffective for failing to move to dismiss the indictment as it failed to give proper notice as a result of the prosecutor's unclear drafting.  (Cv DE# 13).  Godwin raised this claim under ground four in his original motion to vacate.  (Cv DE# 1).  Godwin did not raise this claim in his amended motion to vacate.  (Cv DE# 10).  Subsequent to filing his amendment, Godwin filed a motion to proceed with the amended motion and to dismiss all claims raised in the original motion. (Cv DE# 16).  This Court issued an order granting the motion to proceed and stated, "only the amended motion to vacate will be deemed as the operative motion to vacate."  (Cv DE# 17).  This claim is not contained in the document this court expressly identified as the operative complaint.  Accordingly, the undersigned need not address this claim.

### V.   <u>Waiver Due to Voluntary Guilty Plea</u>

In addition, this argument was waived due to the entry of a knowing and voluntary guilty plea. The law is clear that a movant

waives his right to contest all nonjurisdictional defects and defenses, when he enters a knowing and voluntary guilty plea to the violation. Where a criminal defendant enters a knowing, voluntary, and intelligent plea of guilty to an offense or offenses, he waives, or more accurately, forfeits all non-jurisdictional defects and defenses. See United States v. Broce, 488 U.S. 563 (1989); McMann v. Richardson, 397 U.S. 759 (1970) (voluntary guilty plea waives all non-jurisdictional defects); United States v. De La Garza, 516 F.3d 1266, 1271 (11 Cir. 2008), quoting, Wilson v. United States, 962 F.2d 996 (11 Cir. 1992)(claim of ineffective assistance of counsel relating to pre-plea issues waived by voluntary guilty plea); McCoy v. Wainwright, 804 F.2d 1196, 1198 (11 Cir. 1986)(voluntary guilty plea waives all non-jurisdictional defects); see also, United States v. Glinsey, 209 F.3d 386, 392 (5 Cir. 2000), citing, United States v. Smallwood, 920 f.2d 1231, 1240 (5 Cir. 1991); Smith v. United States, 447 F.2d 487, 488 (5 Cir. 1971), citing, Hayes v. Smith, 447 F.2d 488 (5 Cir. 1971). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." United States v. Glinsey, 209 F.3d at 392.

In this case, review of the record confirms that the movant's plea was knowing and voluntary, and therefore, the movant has waived any defense he may have had prior thereto to the charged conduct. To ensure that a plea is voluntary and knowing, Fed.R.Cr.P. 11(b)(1) states that "the court must address the defendant personally in open court before accepting the plea and inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Gordon v. United States, 496 F.3d 1270, 1277 (11 Cir. 2007). The rule imposes upon a district court the obligation and responsibility to conduct a searching inquiry into the

voluntariness of a defendant's guilty plea. <u>Id</u>. (citations omitted).

Thus, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." <u>United States v. Moriarty</u>, 429 F.3d 1012, 1019 (2005). In <u>Moriarty</u>, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

<u>Id</u>.

Review of the change of plea proceedings reveals that the court conducted a thorough Rule 11 proceeding. (Cv DE#13-2, Transcript of 7/17/07 Change of Plea). At that time, the movant acknowledged under oath[6] that he was satisfied with counsel's representation, and that he had discussed the indictment, the

---

[6]     The law is clear that "solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977); <u>United States v. Rogers</u>, 848 F.2d 166, 168 (11 Cir. 1988). The subsequent presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962).

government's case, and the nature of the charge and possible defenses with counsel prior to the change of plea. (Id. at 6-7). The movant further confirmed that he understood and accepted that there was no written plea agreement. (Id. at 12-14). The prosecutor read the charges, described the factual basis of the charges, and the possible penalties for each charge. (Id. at 8-12). The court advised, and the movant also acknowledged his understanding, that counts 1, 3, and 8 carried a mandatory minimum of 5 years and a maximum of 40 years in prison; that count 4 carried a mandatory minimum of 10 years and a maximum of life in prison; and that count 11 carried a maximum of 10 years in prison. (Id. at 8-9, 12). The movant further acknowledged that the court would consider the advisory guidelines, but was not required to follow the recommended guideline sentence, and could impose a sentence more or less severe than called for by the guidelines. (Id. at 12-14). The movant denied being forced, threatened, or coerced into changing his plea. (Id. at 7). The movant further acknowledged that he would be unable to withdraw his plea should his ultimate sentence be greater than any estimate he had been previously provided. (Id. at 14-15). Finally, the movant confirmed knowing that by entering into the plea he was waiving his constitutional rights to a jury trial and to confront and present witnesses. (Id. at 14-16).

On the record before this court, it is evident that the movant understood the facts and the elements of the offenses upon which the charges rested. Moreover, by way of entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation and not present at a pre-trial or trial proceeding, any legal defenses to which he may be entitled as it relates to his case. Under these circumstances, no showing has been made that the plea was anything but knowing and voluntary.

25

Thus, by entering in to a knowing and voluntary plea, the movant waived all nonjurisdictional defects and defenses. He is therefore barred from pursing his ineffective assistance of counsel claim. Thus, no showing has been made that counsel was deficient or that the movant suffered prejudice therefrom. See <u>Strickland</u>, <u>supra</u>.

VI.   <u>Conclusion</u>

It is therefore recommended that the motion to vacate entered under 28 U.S.C. §2255 be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 24th day of September, 2010.

_____

UNITED STATES MAGISTRATE JUDGE

cc:  Calvin Godwin
     Reg. No. 75933-004
     FCC - Coleman (Low)
     A -44
     Federal Correctional Complex
     Inmate Mail/Parcels
     P.O. Box 1031
     Coleman, FL 33521

     Rinku Talwar Tribuiani
     United States Attorney's Office
     500 S. Australian Avenue
     Suite 400
     West Palm Beach, FL 33401